IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:07cr016-SRW |
| | ) |
| JOSEPHINE MURRY | ) |

**ORDER**

This case is before the court on defendant's Motion to Compel or in the Alternative Motion to Dismiss (Doc. # 13), filed April 16, 2007. The government filed its response to the motion (Doc. # 15) on April 19, 2007, and the court held a hearing on the motion on June 8, 2007.

The information in this misdemeanor case charges that on or about November 30, 2006, defendant Murry stole merchandise with a value of less than $1,000 from the Army Air Force Exchange Service (AAFES) at Maxwell Air Force Base. Specifically, the government alleges that Murry bought two items at the store at an unauthorized discount after she added a 50% (red sticker) discount sticker to a pre-existing 25% (green sticker) on a white blouse, and put a 50% discount sticker on a pair of jeans which was not previously discounted. See Smith Affidavit (attached to information).[1]  Defendant's motion asks the court to compel

---

[1] At oral argument, defendant's counsel said that the "white blouse is alleged to have a green tag on it and then was purchased for the higher discount at 75 percent off with a red tag on it; and the blue jeans had no discount tag whatsoever, but then was purchased later, I believe, for – with the 75 percent discount, with a red tag on it." For purposes of the court's analysis, the discrepancy between this account and the affidavit is not material.

production of the articles of clothing and the discount tags pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Fed.R.Crim.P. 16, and the court's February 4, 1999, standing order on criminal discovery, or, in the alternative, to dismiss the information.

In the instant case, according to the government, security forces returned the two articles of clothing and their tags to AAFES after photographing them, and they are no longer in the government's possession. The United States made the original photograph available for defendant to view, and also transmitted a copy of the photograph. Under these circumstances, the court cannot compel the disclosure of the returned items, now presumably resold, and Brady and the ordinary rules of discovery do not govern this case. Rather, this case is controlled by a line of Supreme Court cases addressing claims concerning the government's failure to preserve evidence, including California v. Trombetta, 467 U.S. 479, 485 (1984); Arizona v. Youngblood, 488 U.S. 51, 55 (1988); and, most recently, Illinois v. Fisher, 540 U.S. 544, 549 (2004). See U.S. v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000) ("[T]he Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. Brady and its progeny address exculpatory evidence that is still in the government's possession. Youngblood and Trombetta govern cases in which the government no longer possesses the disputed evidence." United States v. Femia, 9 F.3d 990, 993 (1st Cir.1993)).

In Olszewski v. Spencer, 466 F.3d 47 (1st Cir. 2006), the First Circuit helpfully summarized the Trombetta-Youngblood-Fisher line of cases:

> To address the problem of the loss or destruction of evidence by the

2

prosecution, "the Supreme Court has developed a framework to analyze 'what might loosely be called the area of constitutionally guaranteed access to evidence.' "[*United States v. Femia,* 9 F.3d 990, 993 (1st Cir.1993)] (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) and *Arizona v. Youngblood,* 488 U.S. 51, 55, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). The Supreme Court's decisions in *Trombetta* and *Youngblood* govern the constitutionality of the nondisclosure of evidence in "cases in which the government no longer possesses the disputed evidence." *Id.*

In *Trombetta,* defendants were charged with drunk driving and objected to the state's admission of breath-analysis tests. 467 U.S. at 483, 104 S.Ct. 2528. They complained that the police had destroyed the original breath samples and that as a consequence they could not conduct their own tests. *Id.* The Supreme Court rejected the defendants' due process claim. *Id.* at 489, 104 S.Ct. 2528. As a threshold matter, the Court noted that the police "were acting 'in good faith and in accord with their normal practice' " when they disposed of the breath samples. *Id.* at 488, 104 S.Ct. 2528 (citing *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). The Court then held that "more importantly," the missing evidence did not "meet [the] standard of constitutional materiality." *Id.* at 488-89, 104 S.Ct. 2528. To satisfy this standard, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* The Court held that neither condition was met. *Id.* First, the samples were not apparently exculpatory because "the chances [were] extremely low that preserved samples would have been exculpatory." *Id.* The second condition was not met because the defendants had "alternative means of demonstrating their innocence," *e.g.* inspecting the calibration of the breathalyzer machine or cross-examining the officer who administered the test. *Id.* at 490, 104 S.Ct. 2528.

Four years later, in *Arizona v. Youngblood,* the Supreme Court considered the police's failure to preserve blood and semen samples taken from a rape victim. A police criminologist had conducted an initial review of the samples, but the state failed to preserve the samples by refrigeration so that the defendant could conduct his own tests. 488 U.S. at 53-54, 109 S.Ct. 333. The *Youngblood* Court found that the evidence was not apparently exculpatory, even though it had potentially greater value than the breath samples in *Trombetta,* because "[t]he possibility that the semen samples could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional

3

materiality in *Trombetta.*" *Id.* at 56 n. *, 109 S.Ct. 333. In explaining *Trombetta's* "apparently exculpatory" requirement, the Court emphasized that it must be apparent that the evidence is exculpatory *before* it is lost or destroyed. *Id.* at 56, 109 S.Ct. 333. The Court then set forth a new standard for lost evidence that is only "potentially useful." *Id.* at 58, 109 S.Ct. 333. The Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. 333. In contrast, the Court recognized that a bad faith showing is not required when the evidence is apparently exculpatory: "[t]he Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." Id. at 57, 109 S.Ct. 333. The defendant did not establish a due process violation under the facts of *Youngblood* because the evidence was only "potentially useful" and the actions of the police could "at worst be described as negligent." *Id.* at 58, 109 S.Ct. 333.

The issue again arose in *Illinois v. Fisher,* 540 U.S. 544, 549, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004), where the Court reviewed *Youngblood* and *Trombetta.* In *Fisher,* the defendant, who was charged with possession of cocaine, filed a discovery motion requesting all physical evidence, including the cocaine, that the state intended to use at trial. *Id.* at 545, 124 S.Ct. 1200. Before the cocaine was provided to the defendant, the defendant "jumped bond" becoming a fugitive. *Id.* When he was captured ten years later, the state reinstated the possession charges but had, in good faith, already destroyed the cocaine. *Id.* at 546, 124 S.Ct. 1200. The Court reiterated that "the applicability of the bad-faith requirement in *Youngblood* depended ... on the distinction between 'materially exculpatory' evidence and 'potentially useful' evidence." *Id.* at 549, 124 S.Ct. 1200. Bad faith was not necessary if the evidence was "materially exculpatory." Such a showing was only concluded that the cocaine was only "potentially useful evidence" and that there was no due process violation under *Youngblood* because the defendant did not allege that the police acted in bad faith. *Id.* at 547-48, 124 S.Ct. 1200.

Olszewski, 466 F.3d at 55-57.  The Olszewski court noted that "[a] variety of other circuits have considered the relationship between *Trombetta* and *Youngblood* and have concluded that (1) the destruction of "apparently exculpatory" evidence does not require a showing of bad faith but that (2) if the evidence is only "potentially useful," a bad-faith showing is

required." Id. at 57 and n. 7 (citing United States v. Moore, 452 F.3d 382, 388 (5th Cir.2006); United States v. Estrada, 453 F.3d 1208, 1212-13 (9th Cir.2006); Bullock v. Carver, 297 F.3d 1036, 1056 (10th Cir.2002); and United States v. Wright, 260 F.3d 568, 571 (6th Cir.2001)). Eleventh Circuit case law is consistent with these cases.  See U.S. v. Roberson, 195 Fed.Appx. 902, 903-904 (11th Cir. 2006) (unpublished) (Defendant must show that the government acted in bad faith in losing potentially useful evidence in order to show a due process violation.); James v. Singletary, 957 F.2d 1562, 1568 n. 4 (11th Cir. 1992) (Destruction of potentially exculpatory evidence violates Constitution only if the police acted in bad faith.); Redman v. Dugger, 866 F.2d 387, 390 (11th Cir. 1989) (Due process is only violated when a defendant can show bad faith on the part of the police who failed to preserve potentially useful evidence.).[2]

---

[2] Defendant has the burden of proving the constitutional violation.  See U.S. v. Revolorio-Ramo, 468 F.3d 771, 774 (11th Cir. 2006) ("'In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense.... 'To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'") (citation omitted); see also Riggs v. Williams, 87 Fed.Appx. 103, 106 (10th Cir. 2004) ("Under *Youngblood,* a defendant can establish a due process violation if he can show that: (1) the government failed to preserve evidence that was 'potentially useful' to the defense; and (2) the government acted in bad faith in failing to preserve the evidence."); U.S. v. Varner, 2006 WL 733962, *4 (W.D.Va. 2006) ("[T]o prevail under the *Youngblood* test, the [defendants] must prove that the destroyed evidence had apparent exculpatory value, that the officers were aware of the exculpatory nature of the evidence before its' destruction, that the officers acted in bad faith, and that no reasonable comparable evidence exists."); U.S. v. Solis, 55 F.Supp.2d 1182, 1189 (D.Kan. 1999) ("The defendants do not show that anyone knew the drug evidence had exculpatory value when it was allegedly used or altered. ... Regardless whether the government can offer an innocent explanation for evidence being destroyed or altered, the burden of proof on bad faith remains on the defendants."); Lile v. McKune, 45 F.Supp.2d 1157, 1163 (D.Kan.1999)("Under

In this case, defendant maintains that the blouse, jeans and tags are materially exculpatory rather than only potentially useful evidence and that, as a result, defendant need not show bad faith on the part of the government in disposing of the items. Specifically, defendant argues: (1) that both pieces of clothing are exculpatory because they could be used to show the jury that the articles in question would not have fit her; (2) that the blouse is exculpatory because it could be used to demonstrate to the jury that the blouse purchased by defendant and/or photographed by security forces was not the same as that on the videotape; and (3) that the tag on the jeans is exculpatory because either there was a red discount sticker on the back of it and, thus, the discount was correctly applied, or there was no sticker on the tag at all and, thus, there was no "tag-switching" – only a mistake at the cash register in the application of the discount.

After examining the videotape and photograph in this case, and hearing oral argument, the court cannot agree that the articles of clothing are materially exculpatory. The fact that defendant could not wear the clothing herself does not mean that she is necessarily innocent of the charge, as she may have switched the tags and purchased the clothing for someone else, such as her daughter or another member of the shopping party. According to defendant's counsel, defendant was acting as the purchaser for all five shoppers. Further, for

---

*Youngblood,* petitioner has the burden of showing the officers acted in bad faith."); U.S. v. Lov-It Creamery, Inc., 704 F.Supp. 1532, 1548 (E.D.Wis. 1989)(The plain language of *Arizona v. Youngblood,* while not using the precise phrase "burden of proof", clearly places that burden on the defendant .... [U]nless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process.").

evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 488-89. Even assuming that it was apparent to the officers of the security force (1) that these garments did not fit the defendant, and (2) that the clothing was actually exculpatory,[3] defendant is able to obtain comparable evidence. The government has stipulated that these garments would not have fit the defendant, a fact which is also evident from the videotape and the sizes of the clothing listed on the photograph of these items. In addition, other witnesses (e.g., security officers, other members of the shopping party) observed the defendant and the garments.

Further, under the Trombetta-Youngblood-Fisher line of cases, the possibility that the blouse could be used to demonstrate to the jury that the blouse purchased by defendant and/or photographed by security forces was not the same as that shown previously on the videotape is not sufficient to satisfy the materially exculpatory standard. That possibility is speculative, at best. Defendant has come forward with no evidence from any witness – despite the fact that many individuals observed the blouse at the time of the incident – that there are differences among any of the following: (1) the blouse that was carried into the dressing room (videotape); (2) the blouse that came out of the dressing room (videotape); (3) the blouse that was purchased by defendant (videotape); and (4) the blouse that was

---

[3] This is assumed for purposes of argument only. In fact, defendant has not established that the officers believed that the clothing would exculpate the defendant.

photographed by security (videotape and Polaroid). On the contrary, the court's viewing of the videotape and the original Polaroid strongly suggests that all of these blouses were one and the same. In addition, nothing before the court establishes that it was actually apparent to the members of the security force that the blouse itself had exculpatory value. The government does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Youngblood, 488 U.S. at 58. It need only preserve that evidence whose exculpatory value is material and apparent. Defendant's mere speculation that the blouse, if retained, could exculpate defendant is insufficient to satisfy the standard of constitutional materiality. As this evidence is only potentially useful, defendant must meet the bad faith standard.

Defendant's claim that the tag on the jeans, if preserved and produced, might show either that there was a red discount sticker on the back or that there was no sticker on the tag at all[4] is similarly speculative. Again, no witness has testified that either of these possibilities actually was the case, nor does any evidence before the court establish that store or security officers knew that the tag would have exculpated the defendant and intentionally destroyed it. On the contrary, according to the government, the store detective will testify that there was no sticker on the other side of the price tag. At best, the tag is only potentially useful, not apparently exculpatory, and again defendant must show bad faith to prove a constitutional violation.

---

[4] The latter is a somewhat puzzling argument, given the fact that a red discount sticker is visible on the tag in the photograph.

However, defendant has failed to show bad faith in this instance. According to the United States, it is standard Army/Air Force Exchange policy to document items of clothing worth less than $100 in a Polaroid photograph taken in the room in which the suspect is interviewed, and to put those items back into the stream of commerce (that is, on the store shelves) on the same day. The government represents that most defendants steal items worth under $100, that approximately five such thefts occur each week, and that the policy of returning merchandise for sale has been followed for at least two and one half years. Although defendant contends that this policy is flawed or unnecessary for various reasons, the court may not adjudicate the wisdom of the policy; it may only decide whether or not the policy is followed in good faith. In this case, nothing before the court suggests that the clothing and tags were returned to the store in order to hide exculpatory evidence. See Trombetta, 467 U.S. at 488 (Authorities did not destroy evidence "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny. In failing to preserve breath samples for respondents, the officers here were acting 'in good faith and in accord with their normal practice.' ... The record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence."); U.S. v. Generett, 149 Fed.Appx. 432, 434 (6th Cir. 2005) ("So long as government officials do not destroy evidence 'in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny,' so long as they act 'in good faith and in accord with their normal practice,' and so long as '[t]he record contains no allegation of official animus towards [the criminal defendant] or of a conscious effort to suppress exculpatory evidence,' ... their actions do not offend the Due

Process Clause.") (citation omitted); see also U.S. v. Revolorio-Ramo, 468 F.3d 771, 774 -775 (11th Cir. 2006).  Thus, the court finds that the government was operating in good faith and in accordance with its normal practice in disposing of the clothing and tags, and there is no Due Process violation. Cf. U.S. v. Garza, 435 F.3d 73, 75 -76 (1st Cir. 2006) (Sergeant's "apparent desire to free up space in the laboratory was not an improper motivation. Moreover, that the evidence was *United States v. Lewis,* 40 F.3d 1325, 1340 (1st Cir.1994) (finding no bad faith in routine destruction of surveillance tapes); *United States v. Arra,* 630 F.2d 836, 849 (1st Cir.1980) (holding that erasure of Coast Guard tapes was done in good faith as part of a routine that was not related to the case).").

    Accordingly, for the foregoing reasons, it is

    ORDERED that the Motion to Compel or in the Alternative Motion to Dismiss (Doc. # 13) be and hereby is DENIED.

    DONE, this 31st day of August, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE